UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HARPREET SINGH,<br><br>    Petitioner,<br><br>    v.<br><br>WARDEN OF THE GOLDEN STATE<br>ANNEX DETENTION FACILITY et al.,<br><br>    Respondents. | No. 1:26-cv-00209-TLN-CKD<br><br><br>**ORDER** |

This matter is before the Court on Petitioner Harpreet Singh's ("Petitioner") Motion for a Temporary Restraining Order[1] ("TRO"). (ECF No. 1.) Respondents filed an opposition. (ECF No. 6.) Based on Respondents' designation of their opposition as one to the issuance of a TRO and preliminary injunction and because the standard for issuing a TRO is "substantially identical" to the standard for issuing a preliminary injunction,[2] the Court considers whether a preliminary injunction should issue. For the reasons set forth below, the Court issues a preliminary

---

[1]    On January 12, 2026, Petitioner filed a pro se Petition for Writ of Habeas Corpus. (ECF No. 1.) Based on the substance of the petition and the relief requested therein, the Court liberally construed the petition as a motion for a TRO. (ECF No. 3.) *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

[2]    *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001).

1

injunction.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Petitioner entered the United States seeking asylum on March 16, 2024.  (ECF No. 1 at 5.)  On March 17, 2024, Petitioner was released by U.S. Immigration and Customs Enforcement ("ICE") and issued a Notice to Appear.  (*Id.*)  Petitioner's wife and daughter subsequently entered the United States to apply for asylum.  (*Id.*)  Following his release, Petitioner obtained work authorization, a social security card, and a driver's license.  (*Id.* at 6.)  Petitioner states he is the only employed person in his family and his daughter and wife financially depend on him.  (*Id.*)  Further, Petitioner states he has no criminal history and complied with all of his immigration requirements.  (*Id.* at 5.)  Respondents do not contest this.  (*See generally* ECF No. 4.)

On September 29, 2025, Petitioner went to his scheduled check-in with ICE at their Fresno, California office and was detained without notice and without any notice of any non-compliance with the conditions of his release.  (ECF No. 1 at 6.)

On January 12, 2026, Petitioner filed a petition for writ of habeas corpus.  (ECF No. 1.)  Based on the substance of the petition and the relief requested therein, the Court construed the petition as a motion for a TRO and now issues the following preliminary injunction.  (ECF No. 3.)

## II.    STANDARD OF LAW

For a preliminary injunction, courts consider whether a petitioner has established: "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest."  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  Petitioner must "make a showing on all four prongs" of the *Winter* test.  *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).

In evaluating a petitioner's motion, a district court may weigh petitioner's showings on the *Winter* elements using a sliding-scale approach.  *Id.*  A stronger showing on the balance of the hardships may support issuing a preliminary injunction even where the petitioner shows that there are "serious questions on the merits . . . so long as the [petitioner] also shows that there is a

likelihood of irreparable injury and that the injunction is in the public interest." *Id.* Simply put, a petitioner must demonstrate, "that [if] serious questions going to the merits were raised [then] the balance of hardships [must] tip[ ] sharply" in petitioner's favor to issue the requested preliminary injunction. *Id.* at 1134–35.

### III.   ANALYSIS

#### A.   Likelihood of Success on the Merits

Petitioner seeks release arguing his detention is unlawful under the Fifth Amendment Due Process Clause. (*See generally* ECF No. 1.) Respondents oppose arguing "the detention authority in this case is lawful under the Constitution and applicable provisions of the Immigration and Nationality Act." (ECF No. 4 at 1.) The Court disagrees and based on the record before it, finds Petitioner has established a likelihood of success on his due process claim.

The Fifth Amendment Due Process Clause prohibits government deprivation of an individual's life, liberty, or property without due process of law. *Hernandez v. Session*, 872 F.3d 976, 990 (9th Cir. 2017). The Due Process Clause applies to all "persons" within the borders of the United States, regardless of immigration status. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all "persons" within the United States, including noncitizens, whether their presence here is lawful, unlawful, temporary, or permanent."). These due process rights extend to immigration proceedings. *Id.* at 693–94.

Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989); *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

As for the first step, the Court finds Petitioner has raised serious questions as to whether he has a protectable liberty interest. *See Rico-Tapia v. Smith*, No. CV 25-00379 SASP-KJM, 2025 WL 2950089, at *8 (D. Haw. Oct. 10, 2025) (noting "[e]ven where the revocation of a person's freedom is authorized by statute, that person may retain a protected liberty interest under

3

the Due Process Clause"). "[T]he government's decision to release an individual from custody creates 'an implicit promise,' upon which that individual may rely, that their liberty 'will be revoked only if [they] fail[ ] to live up to the . . . conditions [of release]." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. July 24, 2025) (quoting *Morrissey*, 408 U.S. at 482) (modifications in original). "Accordingly, a noncitizen released from custody pending removal proceedings has a protected liberty interest in remaining out of custody." *Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC, 2025 WL 2637503, at *6 (N.D. Cal. Sept. 12, 2025). To determine whether an individual's conditional release rises to the level of a protected liberty interest, courts have "compar[ed] the specific conditional release in the case before them with the liberty interest in parole as characterized by *Morrissey*." *R.D.T.M. v. Wofford*, No. 1:25-cv-01141-KES-SKO, 2025 WL 2617255, at *3 (E.D. Cal. Sept 9, 2025).

Here, Petitioner gained a liberty interest in his continued freedom when ICE elected to release him shortly after he entered the United States on March 17, 2024. (ECF No. 1 at 5.) Under *Morrisey*, this release implied a promise that he would not be re-detained, during the pendency of his immigration proceedings, if he abided by the terms of his release. Petitioner states he has complied with all the conditions of his release, and he has no criminal record. Respondents do not contest this. Additionally, Petitioner had been released for over a year, which strengthens his liberty interest. As this Court has found previously, along with many other courts in this district when confronted with similar circumstances, Petitioner has a clear interest in his continued freedom. *See, e.g.*, *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) (noting the Government's actions in allowing petitioner to remain in the community for over five years strengthened petitioner's liberty interest).

As to the second step – what procedures or process is due – the Court considers three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). As set

forth below, the Court finds Petitioner has established his due process rights were likely violated.

First, Petitioner has a substantial private interest in remaining free from detention. As discussed above, Petitioner has lived in the United States for over a year and has built a life outside of detention. He obtained work authorization, a social security card, and a driver's license and has been supporting his wife and daughter. Despite that, Petitioner has now been detained for approximately three months without being afforded a hearing. Accordingly, this factor weighs in favor of finding Petitioner's private interest has been impacted by his detention. *See Manzanarez v. Bondi*, No. 1:25-CV-01536-DC-CKD (HC), 2025 WL 3247258, at *4 (E.D. Cal. Nov. 20, 2025) (finding similarly).

Second, the risk of erroneous deprivation is considerable given Petitioner has not received any bond or custody redetermination hearing. "Civil immigration detention, which is nonpunitive in purpose and effect is justified when a noncitizen presents a risk of flight or danger to the community." *R.D.T.M.*, 2025 WL 2617255, at *4 (internal quotation and citation omitted). The Court finds there is a serious likelihood Petitioner will be erroneously deprived of his liberty interest. Moreover, without any procedural safeguards to determine whether his detention was justifiable, the probative value of additional procedural safeguards is high. *Id.*

Finally, the Government's interest is low, and the effort and cost required to provide Petitioner with procedural safeguards are minimal. *See Garcia v. Andrews*, No. 2:25-CV-01884-TLN-SCR, 2025 WL 1927596, at *5 (E.D. Cal. July 14, 2025). Indeed, it would be less of a fiscal and administrative burden for the Government to return Petitioner home to await a determination on his asylum case than to continue to detain him. *See Hernandez*, 872 F.3d at 996 (noting that in 2017, the costs to the public of immigration detention amounted to a total daily cost of $6.5 million). As this Court stated recently, it would be less of a fiscal and administrative burden for the Government to return Petitioner home to await a determination on his asylum petition than to continue to detain him.

On balance, the Court finds the *Matthews* factors demonstrate Petitioner is entitled to due process – a hearing to determine whether his detention was warranted. Accordingly, with respect to his due process claim, Petitioner has shown he is likely to succeed on the merits.

###### B.    Irreparable Harm

Petitioner has also established he will suffer irreparable harm in the absence of a TRO. The Ninth Circuit recognizes "irreparable harms imposed on anyone subject to immigration detention," including "the economic burdens imposed on detainees and their families as a result of detention[.]" *Hernandez*, 872 F.3d at 995.  Such harm is present here.  Petitioner has been detained for approximately three months, suffers from allergies, and has been unable to support his family financially.  (ECF No. 1 at 6.)  Petitioner further states he is stressed, and his physical health is deteriorating.  (*Id.*)  Even if this was not sufficient to establish irreparable harm, "[i]t is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'"  *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).

###### C.    Balance of Equities and Public Interest

As to the final two *Winter* factors, "[w]hen the government is a party, the analysis of the balance of the hardships and the public interest merge." *Nat'l Urban League v. Ross*, 484 F. Supp. 3d 802, 807 (N.D. Cal. 2020) (citing *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014)).  The Court finds there is no equitable reason that would tip the balance in the Government's favor, because the Government faces no hardship.  First, it is clear on this record that the balance of equities tips decidedly in Petitioner's favor as the Government "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations." *Zepeda v. U.S. Immigr. & Nat. Serv.*, 753 F.2d 719, 727 (9th Cir. 1983).  Second, "it is always in the public interest to prevent the violation of a party's constitutional rights." *Melendres*, 695 F.3d at 1002.  Moreover, "the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering." *Diaz v. Kaiser*, No. 3:25-CV-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) (internal citation omitted). In sum, these last two factors also weigh in Petitioner's favor.

Accordingly, the Court orders Petitioner's immediate release on the same terms as he was

released prior to his detention[3] and issues a preliminary injunction as set forth below.

**IV.  CONCLUSION**

Accordingly, IT IS HEREBY ORDERED:

1.  Respondents must IMMEDIATELY RELEASE Petitioner Harpreet Singh from custody under the same conditions as he was released prior to his current detention.  Respondents shall not impose any additional restrictions on him, unless such restrictions are determined to be necessary at a future pre-deprivation/custody hearing.  **Respondents must file a notice certifying compliance with this provision of the Court's Order by Tuesday, January 20, 2026, at 12:00pm**.

2.  Respondents are ENJOINED and RESTRAINED from re-arresting or re-detaining Petitioner absent compliance with constitutional protections, including seven-days' notice and a pre-deprivation hearing before a neutral fact-finder where Respondents show: (a) there are material changed circumstances which demonstrate that there is a significant likelihood of Petitioner's removal in the reasonably foreseeable future, or (b) Respondents demonstrate by clear and convincing evidence that Petitioner poses a danger to the community or a flight risk.  At any such hearing, Petitioner shall be allowed to have counsel present.

3.  The bond requirement of Federal Rule of Civil Procedure 65(c) is waived.  Courts regularly waive security in cases like this one. *See Diaz v. Brewer*, 656 F.3d 1008, 1015 (9th Cir. 2011);

4.  This matter if referred to the United States Magistrate Judge for further proceedings.

IT IS SO ORDERED.

Date: January 16, 2026

_____
TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE

---

[3]  *See Yang v. Kaiser*, No. 2:25-cv-02205-DAD-AC, 2025 WL 2791778, at *11 (E.D. Cal. Aug. 20, 2025) (status quo ante is "the last uncontested status which preceded the pending controversy.").

7